UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *   14-CR-93-01-LM
          v.                    *   August 25, 2015
                                *   8:00 a.m.
     ALKIS NAKOS                *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF CHAMBER'S CONFERENCE
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY

APPEARANCES:


For the Government:     Terry L. Ollila, AUSA
                        U.S. Attorney's Office




For the Defendant:      Robert L. Sheketoff, Esq.
                        Law Office of Robert L. Sheketoff




Court Reporter:         Susan M. Bateman, LCR, RPR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1453

<pre>
 1                      P R O C E E D I N G S
 2            THE COURT:  All right.  We are on the record now.
 3            Good morning everyone.
 4            MS. OLLILA:  Good morning.
 5            MR. SHEKETOFF:  Good morning, your Honor.
 6            THE COURT:  Final day for charging -- our charging
 7  conference.
 8            I made -- I took executive action last night and
 9  made some stylistic changes that I preferred.  Very minor.  I
10  don't even know that you would notice them.  You may actually
11  have them in your list this morning.  So we can go over your
12  specific requests.
13            I took the paragraph about stipulations out.
14            There was another paragraph that dealt with the
15  word -- it had the word stipulation in it.  I changed that a
16  little bit, you know, to facts the parties agree.
17            Jury verdict is verdict form.  I'm sure -- that's
18  stylistic.
19            You had asked for a stronger reasonable doubt
20  instruction.  I researched that.  What I found was that it's
21  very -- those are very tough.
22            But one of the things the courts indicated was that
23  it's appropriate to give an "unless" version of reasonable
24  doubt instruction rather than "if".  So here's what I wrote.
25  Let me just read it to you.  And I have it in the "consider
</pre>

| | |
|---|---|
| 1 | each count separately," and frankly, the presumption of |
| 2 | innocence is also -- I talk about it in a separate section, |
| 3 | but I added this per your request.  Listen carefully. |
| 4 | The defendant has pleaded not guilty to both |
| 5 | charges.  The defendant does not have to prove that he is |
| 6 | innocent.  The defendant has no burden of proof whatsoever. |
| 7 | The government carries the burden of proof throughout this |
| 8 | trial and throughout your deliberations.  The government's |
| 9 | burden is to prove beyond a reasonable doubt each element of |
| 10 | both charges.  You must presume that the defendant is |
| 11 | innocent throughout your deliberations.  You may not find the |
| 12 | defendant guilty unless all 12 of you agree that the |
| 13 | government has proven each element of a charge beyond a |
| 14 | reasonable doubt. |
| 15 | Is that good for you? |
| 16 | MR. SHEKETOFF:  Yes, it is. |
| 17 | THE COURT:  All right.  Is that okay by you? |
| 18 | MS. OLLILA:  Yes. |
| 19 | THE COURT:  All right. |
| 20 | MR. SHEKETOFF:  While we're on this topic -- |
| 21 | THE COURT:  Yes. |
| 22 | MR. SHEKETOFF:  -- do I get to -- do you allow me |
| 23 | to argue any law to the jury at all?  In other words, the |
| 24 | only law I would talk about is presumption of innocence and |
| 25 | proof beyond a reasonable doubt. |

1          And what I would say about proof beyond a
2    reasonable doubt is that in civil cases we use a lower
3    standard of preponderance, 51 does the trick, but this is a
4    much higher standard and it's not the standard we would
5    normally use in our lives, even in important affairs in our
6    lives, because we use preponderance for those things and this
7    is a higher standard than that.

8          THE COURT:  I don't have any problem with that.  Do
9    you?

10         MS. OLLILA:  You're not going to give a percentage,
11   are you?

12         MR. SHEKETOFF:  I am going to say 99.9.  No, I'm
13   not going to give a percentage.  It's not appropriate.

14         THE COURT:  All right.  So that instruction is okay
15   by you?

16         MS. OLLILA:  Uh-huh.

17         THE COURT:  It's a little repetitive.  I do talk
18   about the presumption of innocence a couple of times, but I
19   don't have any problem with that.

20         All right.  Let me go over your specific issues,
21   you had them last night, and I will make any agreed changes
22   this morning.

23         Did you have any, Attorney Ollila?

24         MS. OLLILA:  No.

25         THE COURT:  Do you have any, Attorney Sheketoff?

1          MR. SHEKETOFF:  Yes, your Honor.

2          On page 10 of the most recent draft that we have

3   you say:  Testimony of witness who pled guilty.

4          I'm not sure that we have a witness who pled guilty

5   to this case -- to this indictment.

6          THE COURT:  We changed it.  It's a little more than

7   stylistic, but I did change that.  Let me tell you how I

8   changed it:

9          You have heard testimony from government witnesses

10   who pled guilty to charges similar in this case.

11          That's how I changed it.

12          MR. SHEKETOFF:  Okay.

13          THE COURT:  Good catch, though.  Anything else?

14          MR. SHEKETOFF:  Yes.  So this is something I've

15   said before and --

16          THE COURT:  You can say it twice.  Go ahead.

17          MR. SHEKETOFF:  Okay.  When you -- this is at page

18   15, essential elements of Count 2.

19          THE COURT:  Yes.

20          MR. SHEKETOFF:  And then you go on --

21          THE COURT:  Yes.

22          MR. SHEKETOFF:  Well, basically what you say is

23   when it's a conspiracy to possess with intent to distribute

24   and to distribute, the government doesn't have to prove both.

25   When it's a marijuana and an MDMA case, the government

1    doesn't have to prove both, which -- although I'm saving my

2    rights on -- I think the case law is in the government's

3    favor on this.

4            But nowhere do you say something -- because we've

5    talked about this before -- that there's a tension between

6    those concepts and that you actually have to prove the

7    agreement alleged in the indictment.

8            So what if they only were -- I throw this in as an

9    example.  What if they were only to find that he agreed with

10   Champagne to do part 1?  So two things occur to me if that

11   were true, and I think a rational jury could conclude that --

12   you know, if they believe Champagne, that there's evidence

13   that he participated in phase one which ended sometime in

14   July of 2009.

15           So first, there's a statute of limitations problem

16   if that's true because this indictment is not returned until

17   July 23rd of 2014.

18           It's a bigger statute of limitations problem on

19   Count 1 than it is on Count 2, because even if you are out of

20   a conspiracy personally if it continues within a time period

21   where the indictment is returned, unless you formally

22   withdrew, which I don't have any evidence of in this case.

23           So I see a statute of limitations possible problem

24   with Count 1.  And I think somewhere you should tell them

25   that at least one of the series of acts, if they get there,

1  has to have occurred after July 23rd of -- on or after July
2  23rd of 2014.
3          I'm not even sure if it's five years if it's the
4  exact same day or the day before it cuts off the five years,
5  but they only have five years to bring that CCE.  And if they
6  believe that his role was just as Champagne says and nothing
7  more than that, they might have a statute of limitations
8  problem on Count 1.
9          So I think you should tell them one of the series
10 of acts has to have occurred after July 23rd of '14, which
11 would be similar to a RICO where you don't have to prove that
12 everything occurred within the statute of limitations, but
13 something had to occur within the statute of limitations.
14         THE COURT:  After --
15         MR. SHEKETOFF:  July 23rd of 2009.  I'm sorry.
16         THE COURT:  2009.  Okay.
17         MR. SHEKETOFF:  Yeah.
18         THE COURT:  Do you have any problem with that at
19 all?
20         MS. OLLILA:  No, I don't.
21         THE COURT:  Okay.  All right.
22         Now let's just look and see exactly where we put
23 it, and then I can just hand this to my JA and have her type
24 it in.
25         So it would be in Count 1, and it would be series

1  of violations.

2          MR. SHEKETOFF:  Right.

3          MS. OLLILA:  You're not going to talk about the

4  statute of limitations, are you?

5          THE COURT:  No, no, no.  I would just add this to

6  their instructions.

7          So the government has proven -- three acts.  I will

8  now describe -- okay.  I don't think it should go there.

9  Let's see.

10         MR. SHEKETOFF:  At least one of which occurred

11 after --

12         MS. OLLILA:  Yeah, you're right.  In the series.

13 We're talking about the series.

14         MR. SHEKETOFF:  Yeah.

15         THE COURT:  At least three of the violations --

16 moreover, you must unanimously agree on which three

17 violations constitute -- see, that's such an important

18 instruction.  I don't want to introduce two concepts there.

19         MS. OLLILA:  What about the last sentence?  You

20 say:  Moreover, you must unanimously agree on which three

21 violations constitute the continuing series of violations.

22         THE COURT:  Where are you?

23         MR. SHEKETOFF:  This is 23.

24         MS. OLLILA:  I'm not sure.  This is the old draft.

25         You must unanimously agree on which three

1   violations constitute the continuing series of violations,

2   and one of them -- and at least one of them must have

3   occurred after July 23, 2009.

4           THE COURT:  Are you good with that, Attorney

5   Sheketoff?

6           MR. SHEKETOFF:  Yes.

7           THE COURT:  Good.

8           You must unanimously agree on which three

9   violations and that at least one of them must have occurred

10  after -- okay.

11          MR. SHEKETOFF:  And so the other part of this, your

12  Honor, is that I would like somewhere in this instruction for

13  you to say, even though it doesn't have to be both marijuana

14  and MDMA, and even though it doesn't have to be both

15  distribution and possession with intent to distribute, it has

16  to be -- he has to join a conspiracy substantially similar to

17  the one that's alleged in the indictment.

18          MS. OLLILA:  I think that's inferred from all the

19  instructions as a whole.  I don't think you have to repeat

20  it.

21          THE COURT:  I could add -- I mean, the agreement

22  charged in the indictment -- when I'm doing the elements of

23  Count 2, first, two or more persons entered into the

24  agreement described in the indictment.

25          MS. OLLILA:  In the indictment, yeah.

1          THE COURT:  Is that okay?  Let me get you where I

2     am.  I'm at the first element of Count 2, so it's page -- in

3     my new edited version it's 15.

4          So first:  Two or more persons entered into the

5     agreement described in the indictment to distribute or

6     possess with intent to distribute marijuana or MDMA in any

7     amount.

8          MS. OLLILA:  Uh-huh.

9          MR. SHEKETOFF:  That's fine.

10         And I have nothing else.

11         THE COURT:  That's it?

12         MR. SHEKETOFF:  Yes.

13         THE COURT:  Okay.  Let me go over -- I think we'll

14    give you some time to get water and relax before your

15    closings -- briefly a couple of issues.

16         I got a question from a juror handed to Kellie via

17    a sticky tab.  I'm going to show it to you and read it.  It

18    was Juror No. 8:

19         "Is it possible to have a copy of the charges to go

20    back during deliberations?"

21         I actually tell them in the instructions when I'm

22    giving them.  I tell them that the instructions themselves, a

23    copy, will go back with them.  And I do actually read Count 1

24    and Count 2 as part of my instructions, as you saw.

25         MS. OLLILA:  Sure.

1          THE COURT:  So I think I answer that in my

2    instructions.  Do you have any suggestions of an alternative

3    way to handle this?

4          MS. OLLILA:  Uh-uh.

5          MR. SHEKETOFF:  Your suggestion is fine with me,

6    your Honor.

7          THE COURT:  Essentially I'm answering it in my jury

8    instructions anyway.

9          MS. OLLILA:  Yeah.

10          MR. SHEKETOFF:  All right.

11          THE COURT:  The answer is essentially yes, but

12    rather than bring Juror No. 8 out, I think I can answer it in

13    my jury instructions unless there's an objection.

14          MR. SHEKETOFF:  No.  I think that's appropriate.

15          THE COURT:  Okay.  All right.

16          Okay.  Marijuana, guns, ammo, how do we deal with

17    that in terms of it going in with the jury?

18          MS. OLLILA:  I would propose -- what we have done

19    before is after the closings the jury goes back into the

20    deliberation room, they get all of the evidence but for the

21    contraband, which will be in the courtroom, and we will have

22    individuals outside the courtroom, but they can come in, I'll

23    give them gloves, and we'll put it in there for a period of

24    time.

25          It's up to you, Judge, but there's so much of it

1   that I think in the courtroom it would be best to allow them

2   to see it.

3           THE COURT:  What's your position, Attorney

4   Sheketoff?

5           MR. SHEKETOFF:  I don't really care, your Honor.

6           THE COURT:  So essentially I won't say anything.

7   We'll leave it in the courtroom if the jury asks can we see

8   such and such, or should I instruct them specifically that

9   these will remain in the courtroom?

10          MS. OLLILA:  Well, do you want the contraband in

11  the courtroom the entire time they're deliberating?  Maybe

12  you should say:  If you would like to review the contraband,

13  it will be available for you in the courtroom.

14          THE COURT:  Because I could just see them strolling

15  out and not understanding that instruction.  That they can

16  just sort of stroll out in the courtroom.

17          MS. OLLILA:  Yeah, yeah.  It will be made available

18  to you in the courtroom upon request.

19          THE COURT:  Okay.  I will just add a sentence in my

20  instruction, the contraband evidence, is that all right -- or

21  the evidence of contraband, including guns, ammunition and --

22          MS. OLLILA:  Marijuana and MDMA.

23          THE COURT:  -- marijuana and MDMA will remain in

24  the courtroom.

25          MS. OLLILA:  Will be available in the courtroom for

1   you upon request.  I mean, I just don't know that you want us

2   to leave it in there the whole time, Judge.

3           THE COURT:  I'll put that right in the same place

4   where I tell them how to notify me if they have a question.

5           MS. OLLILA:  Sure.

6           THE COURT:  The evidence of contraband, including

7   guns, ammunition, marijuana, and MDMA, will be available for

8   your review if you request it.

9           MR. SHEKETOFF:  I have no problem with that.

10          THE COURT:  Does that sound okay with you?

11          MR. SHEKETOFF:  Yes, your Honor.

12          THE COURT:  Dough Boy.  There were no statements we

13  could find.

14          MS. OLLILA:  Okay.  What did he say about Dough

15  Boy?

16          MR. SHEKETOFF:  That he was there.

17          THE COURT:  He started to say something.

18          MS. OLLILA:  Right.

19          THE COURT:  And then I believe he was either cut

20  off or he never answered the question.

21          MS. OLLILA:  Okay.

22          THE COURT:  But he didn't offer statements.  That's

23  what my law clerk's review of the real-time transcript

24  showed.

25          MR. SHEKETOFF:  If I'm at a point in the

1  deliberations where they're taking Mr. Sweeney seriously, I'm

2  not winning this case.

3          THE COURT:  All right.  Now, yesterday with regard

4  to Mr. Nakos I certainly made clear that he has a right not

5  to testify because that was what he expressed.  I didn't turn

6  around and then say, you understand you have a right to

7  testify and that nobody -- you know, that's your decision.

8          MR. SHEKETOFF:  Uh-huh.

9          THE COURT:  I may just ask him again just to

10  reaffirm.  I would do it -- unless anybody objects, I would

11  do it before the jury comes out, because you haven't rested

12  yet so he would still have an opportunity, if he wanted, to

13  testify.

14          MR. SHEKETOFF:  Right.

15          THE COURT:  If he changed his mind, obviously we

16  would break and I would give you time to regroup, both of

17  you, but I just wanted to make clear on the record with him

18  that --

19          MR. SHEKETOFF:  A lot of judges do that, your

20  Honor.

21          THE COURT:  I never really contemplated doing it.

22  You raised it at the end.

23          MS. OLLILA:  It's really good for habes in the

24  future just to have a record that you advised him that he has

25  the ability to testify.

1          THE COURT:  I always assume counsel explains that

2     to the defendant.

3          MS. OLLILA:  And that's true.  Except than when you

4     have a habe and an inmate saying my counsel never explained

5     it.  If you have a record where the judge tells him that,

6     it's sort of independent evidence.

7          THE COURT:  Yeah, I get that.  I always feel

8     uncomfortable talking directly to a criminal defendant in any

9     way implying with my questions that he should testify or

10    that -- so my instinct I think as a judge is to allow counsel

11    to make that clear to him.  But in any event, I did ask him

12    yesterday.

13         MS. OLLILA:  Right.  Yeah.

14         THE COURT:  So I want to just make clear with

15    him --

16         MS. OLLILA:  You can simply say:  I asked you

17    yesterday if you were going to testify and you indicated you

18    decided not to.  You do understand, don't you, that you have

19    the right to testify.

20         THE COURT:  Yeah, I'll be gentle, but I do want to

21    ask him that, just get it on the record, okay, unless

22    somebody has an objection.

23         MR. SHEKETOFF:  I don't.

24         THE COURT:  All right.  Okay.  Kaylee.

25         MS. OLLILA:  Couture, yeah.

1          THE COURT:  Now, they heard -- and I remember her

2    as Kaylee.  I know there was later testimony where she was

3    referred to as Kaylee Couture.

4          Do you have a preference?  Should I identify her as

5    Kaylee Couture or do you care?  I was just going to say

6    Kaylee but --

7          MR. SHEKETOFF:  Well, actually there is a second

8    Kaylee.

9          MS. OLLILA:  But it's Kaylen.  That's Koustas'

10   daughter at the pizza shop.  That's Kaylen.

11          THE COURT:  I don't think she came into evidence,

12   did she?

13          MS. OLLILA:  No.  The pizza shop.  Nick Champagne

14   was talking about Koustas' pizza shop.  That he would go to

15   Kaylen's Pizza over near L.L. Bean.

16          MS. SHEKETOFF:  Well, he also says in the tape that

17   -- he's talking to Koustas about his daughter, and he

18   suggests that he let the rabbit out the back door and tell

19   the daughter that the dog got it, and I think he refers to

20   her as Kaylee.  I have a hard time understanding him

21   sometimes, but I think that Koustas' daughter has a daughter

22   named Kaylee.

23          THE COURT:  Should I say Kaylee Couture then to

24   identify her?

25          MR. SHEKETOFF:  Yes.

1          THE COURT:  Okay.  All right.  So I'll just tell

2     them they heard testimony about statements made by an

3     individual identified as Kaylee Couture.  I have disallowed

4     that evidence.  In other words, I've struck it from the case.

5     I'll reword that.

6          I've also -- having now heard all of the evidence,

7     the Andre Watson -- you've heard testimony that Andre Watson

8     committed a crime, I've also struck that from evidence.  I'm

9     inclined to do that based on the totality.

10          MS. OLLILA:  Oh, yes.

11          THE COURT:  But not if you don't want me drawing

12     attention to it.

13          MS. OLLILA:  Definitely.

14          THE COURT:  Because the probative value is

15     minuscule compared to the prejudice.

16          MS. OLLILA:  Right.

17          THE COURT:  And I think where I'm doing Kaylee

18     Couture it fits in.

19          MR. SHEKETOFF:  I agree, your Honor.

20          THE COURT:  And it won't look -- okay.  All right.

21     So I'll handle both of those really the same way.

22          MR. SHEKETOFF:  There is one other item I was going

23     to put into evidence today the prosecutor was kind enough to

24     redact.  So there's this letter.

25          There's only one remaining issue that I see, which

1    is -- since the letter is to me -- I don't have any evidence

2    that this letter was -- that a similar thing was communicated

3    to counsel for the defendant -- counsel for Mr. Champagne.

4            THE COURT:  I'm sure it was.  You don't dispute it?

5            MS. OLLILA:  Yeah.  Of course.

6            THE COURT:  So why not a stipulation then to that

7    effect?

8            MR. SHEKETOFF:  Okay.  So can I just stand up and

9    say the parties have stipulated that this information was

10   also communicated on or about August 4th?

11           MS. OLLILA:  No.  It wasn't communicated on or

12   about then, but you can stand up and say it was communicated

13   to you and counsel for Champagne.

14           MR. SHEKETOFF:  Okay.

15           THE COURT:  And that's just an agreement like the

16   fact that the marijuana tested positive for marijuana.

17           MR. SHEKETOFF:  Right.

18           MS. OLLILA:  Yes.  Of course.

19           THE COURT:  So I don't have to put stipulation back

20   in.

21           MR. SHEKETOFF:  Okay.  All right.

22           THE COURT:  So we'll just agree that you can -- it

23   might be helpful to them, though, to have some sort of formal

24   stipulation.  Do you care, the form of it?

25           MR. SHEKETOFF:  I don't.

1          THE COURT:  All right.  So this will come in as

2     Defendant's Exhibit 2, and then you can use that in your --

3     actually, I think the jury needs to hear at the time this is

4     admitted that the parties have agreed.

5          MS. OLLILA:  Sure.

6          MR. SHEKETOFF:  Yes.

7          THE COURT:  So as you introduce it, you can make

8     that statement, Attorney Ollila can then affirm that's true,

9     and then you can rest.

10         MR. SHEKETOFF:  Yes, your Honor.

11         THE COURT:  Good.

12         MS. OLLILA:  Judge, I timed my closing last night.

13    It's probably like an hour and fifteen minutes only because I

14    play some tapes.  Are you okay with that?

15         THE COURT:  That it's an hour and fifteen?

16         MS. OLLILA:  Yes.

17         THE COURT:  The length of it?

18         MS. OLLILA:  Yes.

19         THE COURT:  I'm okay with that.

20         MS. OLLILA:  Good.  Thank you, Judge.  I appreciate

21    it.

22         THE COURT:  My husband was in disbelief last night

23    that -- I'm looking over the instructions and he says, you

24    don't read those, you don't read those, and I'm like, yes,

25    how do you think the jury, you know, gets the instructions,

1    and he couldn't believe that 35 pages would be read to a

2    group of people.

3                MR. SHEKETOFF:  In the old days you would read it

4    and that was it.

5                MS. OLLILA:  And they wouldn't get a copy.

6                MR. SHEKETOFF:  And they wouldn't get a copy.  They

7    wouldn't have anything.  35 pages of these technical

8    instructions that lawyers and judges could fight over for

9    weeks and you have all this training to -- yeah, and they

10   just sit there.

11               THE COURT:  We can go off the record.

12               (Conclusion of chamber's conference at 8:30 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

     I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 4-8-16

**SUSAN M. BATEMAN, LCR, RPR, CRR**
LICENSED COURT REPORTER, NO. 34
STATE OF NEW HAMPSHIRE