# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | No. 1:14-cr-93-01-LM |
| ) | |
| **ALKIS NAKOS** ) | |

## UNITED STATES' OBJECTION TO DEFENDANT'S REQUEST FOR VARIANCE FROM SENTENCING GUIDELINES AND REQUEST FOR GUIDELINES SENTENCE

The United States of America, by Emily Gray Rice, United States Attorney for the District of New Hampshire, objects to defendant Nakos's sentencing memorandum requesting a variance from the otherwise applicable advisory sentencing guideline range in this case. A sentence within the guidelines meets all the factors set forth in 18 U.S.C. § 3553(a) for a case involving a life-long and unrepentant drug dealer. Having spent a life time living off the considerable profits of his drug dealing enterprise, a sentence within the guidelines range will assure the public that it no longer need fear the defendant will again threaten public safety through profiting from the distribution and sale of controlled substances.

Nakos was convicted after a jury trial of conspiring to distribute and to possess with the intent to distribute more than 1000 kilograms of marijuana and conspiring to distribute and to possess with intent to distribute methamphetamine. *United States v. Nakos*, 1:14-cr-93-01-LM. Verdict Form, Docket Entry ("DE") 188 (D.N.H. Aug. 26, 2015). The jury also agreed that the United State had proved beyond a reasonable doubt that Nakos was guilty of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. *Id.* In order to reach its verdict on the 21 U.S.C. § 848 count the jury had to unanimously agree that Nakos served as a manager, organizer or supervisor of a drug distribution conspiracy that engaged in a continuous series of

1

violations of Title 21 and from which Nakos obtained substantial income or resources. 18 U.S.C. § 848(c). Respect for the jury's finding warrants a sentence within the guideline range.

**The Presentence Investigation Report
Correctly Calculated Nakos' Total Offense Level**

**Introduction.**

District courts are required to begin all sentencing proceedings by correctly calculating the applicable advisory guideline range. *United States v. Milan-Isaac*, 749 F.3d 57, 66 (1st Cir. 2014).

> Far from a meaningless exercise, the requirement that the district court begin by correctly calculating the GSR serves an important function; it provides a "framework or starting point" to guide the exercise of the court's discretion. *Freeman v. United States,* ––– U.S. ––––, 131 S.Ct. 2685, 2692, 180 L.Ed.2d 519 (2011). Starting with such a framework gives the sentencing judge "an idea of the sentences imposed on equivalent offenders elsewhere," *67 which in turn "promote[s] uniformity and fairness" in sentencing. *United States v. Rodríguez,* 630 F.3d 39, 41 (1st Cir.2010). Thus, even though sentencing judges are free to impose non-Guidelines sentences in appropriate cases, "district courts must still give respectful consideration to the now-advisory Guidelines (and their accompanying policy statements)." *Pepper v. United States,* ––– U.S. ––––, 131 S.Ct. 1229, 1247, 179 L.Ed.2d 196 (2011) (internal quotation marks omitted).

*Id.* at 66-67.

In this case, the PSR correctly identified the drug quantity applicable to Nakos, correctly applied a two point specific offense characteristic for possession of a firearm, and correctly applied a two level specific offense characteristic for

**The Drug Quantity**

Nakos challenges as absurd the revised presentence report's (PSR) calculation of 6,000 pounds attributable to the defendant based on the testimony of Nicholas Champagne, but offers no other method to calculate the quantity other than to suggest a fifty per cent reduction. Nakos' challenge should be rejected because the trial testimony, tested by cross examination, supports the PSR finding. Moreover, other evidence in the case supports that finding.

Nicholas Champagne testified that he met the defendant while they were both incarcerated. *United States v. Nakos*, 1:14-cr-93-LM, Trial Transcript at 38 (Aug. 20, 2015 p.m. session).[1] Champagne was released from prison in November 2007 and began selling low grade Mexican marijuana several months later. TT 8/20/2015 p.m. at 39. He moved to a better quality of marijuana provided by a Canadian source Mihail Leventis. TT 8/20/2015 p.m. at 40. Champagne testified that he, Leventis and Nakos had been incarcerated together and that Leventis and Nakos were friends. TT 8/20/2015 p.m. at 41. Champagne told the jury that, after Nakos met Leventis in Canada, that Champagne and Nakos had a conversation about setting up a supply of Canadian marijuana. TT 8/20/2015 p.m. at 42-43. Champagne testified that the marijuana would be supplied in minimum increments of 50 pounds and that the price ranged anywhere from $2,300 to $2,600 per pound. TT 8/20/2015 p.m. at 44.

Champagne recalled that he met a Canadian individual referred to as Goofy[2] at Nakos' restaurant in January or February of 2008. TT 8/20/2015 p.m. at 46. During a conversation for which Nakos was present, Champagne was provided a cell phone by Goofy and was told that they would communicate by voice and text through that cell phone. TT 8/20/2015 p.m. at 47-48. Champagne testified that he was told he would be given a couple of days' notice before a shipment of marijuana would be sent and that he received the first shipment in about a week after the meeting. TT 8/20/2015 p.m. at 49. Champagne would meet some "Canadian kids" at arranged meeting place and take possession of the duffel bags or marijuana. He would then sell it over the next couple of weeks. TT 8/20/2015 p.m. at 50-51.

---

[1] For ease of reference, trial transcripts will be referred to as TT-date-page. For example, page 38 of the August 20, 2015 afternoon session will be referred to as TT 8/20/15 p.m. 38.
[2] Goofy was the nickname for Stephen Sarti.

Champagne testified that he received no less than 50 pounds every two weeks and that he occasionally received more, but never more than 200 pounds. TT 8/20/2015 p.m. at 53; 64. He identified two customers – Nick Lawyer and Corey Buchan – that he would give fifty pounds each for resale. TT 8/20/2015 p.m. at 53-55. He identified Kosmos Koustas and Dave Coulombe as individuals who would help him sell the marijuana. TT 8/20/2015 p.m. at 55-56. Champagne said he moved 100 to 400 pounds per month. TT 8/20/2015 p.m. at 57.

Champagne identified 10 Delaware Avenue in Manchester as a "stash house" which he defined as premises used to store drugs. TT 8/20/2015 p.m. at 69-70. He testified that Nakos, Koustas, Jonathan Venturini, Charles Fowle and David Coulombe had all been to the residence. TT 8/20/2015 p.m. at 71. He also testified that he used his cousin Jeremy Blevens residence to store marijuana on approximately twelve occasions, each time storing 50 to 100 pounds.

Champagne was arrested in July 2009. Sometime before his arrest, he delivered $194,000 to two women as payment for marijuana. TT 8/20/2015 p.m. at 68-69. He testified that he paid Nakos $25 for every pound of marijuana and that he had paid Nako0s $150,000 in total. TT 8/20/2015 p.m. at 81.

Champagne told the jury that he made a few hundred thousand dollars selling marijuana. TT 8/20/2015 p.m. at 83. He admitted that he did not keep track of his earnings, and acknowledged that he may have made as much as a million dollars. TT 8/20/2015 p.m. at 84.

Champagne's testimony is corroborated by other testimony and evidence elicited during the trial of this case. Jonathan Venturini testified that he and Nick Lawyer were receiving 50 pounds of marijuana at a time from Nick Champagne and others. TT 8/20/2015 at 11.[3] Nakos

---

[3] The trial testimony of Jonathan Venturini was separately transcribed and thus separately paginated. Accordingly, transcript references of Mr. Venturini's testimony refer to the page numbers of the separate transcript.

approached him after Champagne's arrest and sought information as to how much Venturini was paying Champagne for marijuana. TT 8/20/2015 at 19. Venturini declined to provide information to Nakos and told him to speak to other customers of Nick Champagne. Sometime after that conversation, Kosmos Koustis sold Venturini five pounds of marijuana. Venturini estimated he dealt thousands of pounds of marijuana. TT 8/20/2015 at 27.

Other trial testimony also corroborates the drug quantity estimate made by the probation officer. Testimony at trial included testimony about the seizure of 1357 pounds of marijuana in January 2009 at Highgate Springs, Vermont, 200 pounds of which was designated "NH.". There was testimony about the seizure of more than $2 million dollars from Brandon Anderson in Oklahoma, the seizure of more than $190,000 delivered to two couriers by Nicholas Champagne, the seizure of 200 pounds of marijuana from a vehicle registered to Trevor Allain and the seizure of $275,000 from a vehicle associated with Allain by the Pittsburg, New Hampshire Police Department. There was testimony of other seizures of 50 pound quantities and hockey bags with "NH" designated on the bags.

This testimony serves as more than sufficient to establish by a preponderance of the evidence that the PSR's calculation that the drug quantity assignable to Nakos was more than 3,000 but not greater than 10,000 kilograms of marijuana.

**Application Of The Firearm Specific Offense Characteristic Was Proper.**

Nakos attacks the PSR's application of the two point specific offense characteristic found at U.S.S.G. § 2D1.1(b)(2) claiming that the evidence fails to prove that Kosmos Koustis possessed a firearm in furtherance of the drug conspiracy and that Nakos was not aware Koustis possessed the firearm. Neither claim is persuasive.

Koustis pleaded guilty to a violation of 18 U.S.C. §924(c) in that he possessed a firearm in furtherance of the drug trafficking conspiracy. The government submits that Koustis' plea to that charge serves as a complete answer to Nakos' first challenge. Even if that plea were not in and of itself sufficient, Koustas, while being pursued by the police, was caught on a wiretap instructing a co-conspirator to empty out Koustas' residence of drugs and guns. PSR at ¶ 39. That recording is powerful evidence that the firearms Koustas possessed were in furtherance of the drug trafficking conspiracy.

Nakos' second challenge is no more persuasive. Under the relevant conduct rules set forth at U.S.S.G. § 1B1.3, the application of specific offense characteristics with respect to Nakos shall be determined by all acts and omissions that were within the scope of the jointly undertaken criminal activity, were in furtherance of that activity, and were reasonably foreseeable in connection with that activity. Nakos is also liable for all acts and omissions that were part of the same course of conduct or common scheme or plan. U.S.S.G. § 1B1.3(a)(2).

Possession of a firearm in association with the trafficking of millions of dollars' worth of drugs was clearly foreseeable to Nakos. Indeed, his arrest in 1997 for possession and trafficking of a much smaller quantity of drugs included a charge of being a felon in possession. Although that charge did not lead to a conviction, it established that Nakos would reasonably foresee the possession of firearms by one of his co-conspirators in the instant offense.

The First Circuit has held that the specific offense characteristic for possession of a firearm can be based on relevant conduct. *David v. United States*, 134 F.3d 470, 475-76 (1st Cir. 1998). In *David*, the petitioner challenged application of the firearm offense characteristic on relevant conduct grounds. Upholding the application of the offense characteristic, the Court noted that U.S.S.G. § 1B1.3(a)(2) included the conduct of those involved in a common scheme

6

or plan. Because the evidence in this case establishes that Koustas and Nakos were part of the same conspiracy, the relevant conduct rule applies and Nakos is liable for the firearm possession specific offense characteristic.

The application note to the specific offense characteristic also supports its application. The application note provides that the enhancement should be applied unless "it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 1B1.3 comment. n.11. In light of Koustas' guilty plea to the 924(c) charge and his clear statement connecting the drugs to the firearms by directing a coconspirator to see that both were removed from Koustas' residence before the police closed in, it is not "clearly improbable" that the firearm was connected to the drug trafficking conspiracy.

### The PSR correctly applied the criminal livelihood enhancement.

Nakos objects to the application of the specific offense characteristic found at U.S.S.G. § 2D1.1(b)(15)(E) which increases a defendant's offense level if the defendant receives an aggravating role adjustment and the commission of the offense involved a pattern of criminal conduct engaged in as a livelihood.

The commentary to the guideline states that the terms "pattern of criminal conduct" and "engaged in as a livelihood" have the meaning given such terms in U.S.S.G. § 4B1.3. U.S.S.G. § 2D1.1, comment. n. 20(C). The term pattern of criminal conduct means planned criminal acts occurring over a period of time and includes a single course of conduct. U.S.S.G. § 4B1.3, comment. n. 1. The term engaged in as a livelihood means that the defendant derived income from the pattern of criminal activity that exceeded 2,000 times the existing federal hourly minimum wage in any twelve month period and a totality of the circumstances shows that such

criminal conduct was the defendant's primary occupation in that twelve month period. U.S.S.G. § 4B1.3, comment. n. 2.

In *United States v. Morris*, 791 F.3d 910, 914 (8th Cir. 2015), the defendant challenged the imposition of the two level enhancement found at U.S.S.G. § 2D1.1(b)(15)(E). Upholding the enhancement, the court noted that the evidence established that Morris was selling large quantities of methamphetamine every week, he purchased a car for $13,000 in cash, he paid cash for $14,000 worth of repairs and improvements on his home and he purchased several businesses. Similarly, in *United States v. Nastri*, 2016 WL 1639838 at p. 3 (2d Cir. 2016 (Summary Order), the court rejected a defendant's challenge to imposition of the enhancement. The court noted that the evidence proved that Nastri's confederates paid him between $4,000 and $5,000 per trip to Vermont and that a minimum of five to seven trips took place during the two year existence of the conspiracy.

The facts of the instant case amply support imposition of the enhancement. Testimony at trial established that Nakos was paid approximately $150,000 by Champagne over an 18-month period. Evidence also established that he paid approximately $50,000 for home improvements, that he purchased two Mercedes automobiles. Nakos's accountant testified that Nakos' reported income during 2008 and 2009 was just over $30,000 per year, yet he reported bank account interest earnings of $1,990 in 2009. Nakos' reported income in 2010 was $27,600 with $707 dollars in reported interest. TT 8/21/2015 at 49-55.

The evidence clearly established that Nakos was involved in a pattern of criminal conduct engaged in as a livelihood.

Nakos objects to the imposition of the enhancement as impermissible double counting because he was convicted under 21 U.S.C. § 848. Nakos' objection should be rejected.

The proper comparison in analyzing whether impermissible double counting has occurred is between the applicable guideline provisions and not between guideline provisions and the criminal code. *United States v. Williams*, 14 F.3d 30, 32 (2d Cir. 1994). Even when comparing guideline provisions, double counting is permissible unless the text of the guidelines expressly prohibit it. *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). As the First Circuit has stated:

> When neither an explicit prohibition against double counting nor a compelling basis for implying such a prohibition exists, clearly indicated adjustments for seriousness of the offense and for offender conduct can both be imposed, notwithstanding that the adjustments derive in some measure from a common nucleus of operative facts.

*United States v. McCarty*, 475 F.3d 39, 46 (1st Cir. 2007)(quoting United States v. Lilly, 13 F.3d 15, 20 (1st Cir 1994).

The guideline applicable to Nakos' count one conviction also supports application of the specific offense characteristic. The commentary to continuing criminal enterprise guideline at U.S.S.G. § 2D1.5 expressly excludes application of any Chapter 3 role in the offense provisions. U.S.S.G. § 2D1.5, comment. <u>Background</u>. The commentary makes no mention of any double counting concerns involving U.S.S.G. § 2D1.1(b)(15)(E). The commentary establishes that the Sentencing Commission clearly identified and addressed the only double counting concern applicable to U.S.S.G. § 2D1.5. The PSR correctly applied the specific offense characteristic at U.S.S.G. § 2D1.1(b)(15)(E).

**The Sentencing Factors At 18 U.S.C. § 3553(a) Warrant A Guidelines Sentence.**

The sentencing factors at 18 U.S.C. § 3553(a) warrant a sentence within the advisory guidelines range of 324 to 405 months. The United States requests that the defendant be sentenced to 336 months.

9

The nature and circumstances of the offense and the defendant's history and characteristics support the government's request. The evidence at trial and which the jury found proved beyond a reasonable doubt established that Nakos was engaged in a large drug trafficking conspiracy involving thousands of kilograms of marijuana and millions of dollars. This drug enterprise was a sophisticated illegal operation, involving dozens of individuals in Canada, New Hampshire and other parts of the United States. The enterprise coordinated the movement of thousands of kilograms of marijuana into the United States from Canada, the movement of the proceeds from the sale of the marijuana back to Canada and to California for the purchase of cocaine and the movement of that cocaine back to Canada.

Nakos served as the leader of the New Hampshire part of the enterprise. He became involved in the enterprise soon after finishing an approximate seven year prison sentence on a state drug trafficking charge. He generated substantial income from the enterprise, using that income to purchase luxury automobile, pay for significant home improvements, and to fund his interest in gambling. *See* PSR at p.11 n. 4 (stating that Nakos used $658,445 at Foxwoods Resort and Casino between 2008 and 2014. His rapid return to drug trafficking after his release from state prison establishes that he is a high risk of recidivism. The lucrative lifestyle it afforded him during the life of the conspiracy also suggests he is likely to return to criminal activity.

The seriousness of the offense also warrants a within-the-guidelines sentence. Unlike many drug defendants who are motivated to engage in trafficking to support their own habit, Nakos' ran the enterprise as a business. He generated a substantial income by selling drugs. His enterprise ran unchecked for at least six years during which time he was responsible for the

10

distribution of thousands of kilograms of marijuana.  The size and duration of the enterprise heightens the seriousness of the offense.

A within-the-guidelines sentence is also called for in order to promote respect for the law and to provide just punishment for Nakos.  The operation he ran involved one of the largest drug enterprises in New Hampshire.  It is appropriate that a guidelines sentence be imposed in order to provide the public with assurance that significant drug dealers will receive significant sentences.  That is particularly the case when the enterprise is a business that generates substantial illegal income to its managers.

A sentence of 336 months is not unjust with respect to Nakos.  His near immediate return to drug trafficking after serving a seven year drug trafficking state prison sentence demonstrates that Nakos felt the cost of his incarceration did not outweigh the lucre he could derive from returning to the business.  Having enjoyed the benefits generated by six years of drug trafficking, a just sentence is one that imposes a cost that substantially outweighs any benefit if Nakos and others similarly situated are to be deterred.

Deterrence and public protection also support a within-the-guidelines sentence for Nakos.  It is clear that Nakos needs to be specifically deterred from engaging in drug trafficking in the future.  That message is particularly important because Nakos has seen the enormous financial benefits that engaging in drug trafficking can provide.  Deterring him from seeking those benefits in the future requires a guidelines sentence.

A sentence of 336 months also should deter other individuals who would engage in the operation of a significant drug enterprise.  It is a sentence that is sufficient, but not greater than necessary, to let others who would consider such activity know that the consequences are significant.

A within-the-guidelines sentence also serves to protect the public from Nakos. He has demonstrated his desire to return to criminal activity as soon as he was released from prison. The public deserves some comfort in knowing that Nakos will not be endangering them by engaging in criminal activity for a substantial period of time. A sentence of 336 months achieves that result.

In any given case there is "a range of reasonable sentences." *United States v. Flores-Machicote*, 706 F.3d 16, 24 (1st Cir. 2013). The extent of a variance requires a more significant justification that must be made explicit. *United States v. Crespo-Rios*, 787 F.3d 34, 39 (1st Cir. 2015). Nakos request for a 240 month sentence is 84 months below the low end of the applicable advisory guideline, a variance of 25.9% . Aside from the medical situation involving his daughter, there appear to be no grounds that distinguish Nakos from any other defendant convicted of similar offenses. Such a significant variance as that requested by the defendant requires significant justification, and Nakos has failed to provide one.

Accordingly, the United States respectfully requests that the court deny Nakos' request for a variance and sentence him to a within-the-guidelines sentence of 336 months.

    Respectfully submitted,

    EMILY GRAY RICE
    United States Attorney

    /s/ Donald Feith
    Donald Feith
    First Assistant U.S. Attorney
    New Hampshire Bar # 783
    53 Pleasant Street, 4th Floor
    Concord, New Hampshire 03301
    Donald.Feith@usdoj.gov

## **CERTIFICATION**

  I certify that a copy of this objection has been served electronically, through ECF, on Charles Keefe, Esquire, Wilson, Bush, Durkin & Keefe, 184 Main Street, Suite 222, Nashua, New Hampshire, 03060, counsel for the defendant, on June 6, 2016.

                /s/ Donald Feith
                Donald Feith